## R. K. WILLIAMS v. T. J. ASHBROOK CO.

Contracts—Place to be Performed.—Terms of.

A contract: "Paducah, Ky. * * * B. K. Williams has agreed to let us take one half interest in 150 barrels rectified whisky which he contracted for from them Dec., 1864, at $1.82 per gallon. * * * We are to divide profits, * * * and to charge nothing for accepting or selling." This whisky was contracted for by Williams at Cincinnati, to be shipped on his order. Held that the meaning of the contract was that the whisky was to be sold in Paducah, the place where the contract was to be performed.

Same—Partnership.

In a contest between the parties. to this contract, the element of partnership could not enter in same.

APPEAL FROM GRAVES CIRCUIT COURT.

June 28, 1871.

OPINION OF THE COURT BY JUDGE PETERS:

On the 1st of December, 1864, R. K. Williams bought of Buchanan & Co. of Cincinnati five hundred barrels of rectified whisky at the price of 1.82 cents per gallon, to be delivered to the purchaser, or his order in such lots as he might desire.

On the 24th of January, 1865, Williams and J. T. Ashbrook & Co. entered into the following agreement:

"Paducah, Ky., January 24, 1865.

"R. K. Williams has agreed to let us take one-half interest in

150 barrels Buchanan & Co. rectified whisky, which he contracted
for, from them in December, 1864, at 182 cents per gallon.

"We have agreed to accept his paper as per letter of authority
of this date, after paying the purchase price, and all interest on
deferred payment, and other costs. We are to divide profits, one-
half to said Williams, one-half to T. J. Ashbrook & Co. We are
to charge nothing for accepting or selling.

"R. K. Williams.
"T. J. Ashbrook & Co."

It appears that at the time of the execution of this agreement
T. J. Ashbrook & Co. were grocery merchants at Paducah, and
soon afterwards sold the whole of the whisky in Cincinnati without
ever having removed it from the warehouse in which it was stored.
That the sale was made by them without the knowledge, or consent
of Williams at a loss of $1,328.32, one-half of which they claim
should be paid by Williams. He denied his liability for any part
of the loss, on the ground that Paducah was the place at which,
by the terms of the agreement, the whisky was to have been sold
by Ashbrook & Co., and that they had no right to sell the whisky
in Cincinnati without the knowledge or concurrence of Williams.

Upon a case agreed by the parties, and submitted to the court
below judgment was rendered against Williams for one-half of the
loss on the sale of the whisky. And Williams has appealed.

In support of the judgment, it is insisted by counsel for appel-
lees that the written agreement created a partnership between the
parties as to the 150 barrels of whisky, and that either partner had
full authority to dispose of the whole or any part of the assets,
whenever and wherever he chose.

If this were a controversy between the parties to the agreement
and a stranger, the question of partnership or no partnership
might become important. But the contest is between the parties
themselves and the only question is, what did they mean, or intend
by entering into this contract? What rights or obligations did they
intend to impart, and impose on each other?

This question, like all others growing out of contracts in writ-
ing, is a question of construction, and is to be solved by considering
the language used in the writing in the light afforded by the situa-
tion and circumstances surrounding the parties at the time.

The appellant at the date of the contract was one of the judges
of this court, and at the time of the sale, engaged in the discharge
of his duties in Frankfort.

Appellees were grocery merchants, engaged in the business of buying and selling commodities, including whisky, as usually belonging to the grocery trade. As already stated, appellant owned five hundred barrels of whisky which at the date of the contract were in store in Cincinnati, and had been since his purchase of them on the 1st of the month preceding the sale to appellees. Under these circumstances the contract in question was entered into, by which, in effect, appellees purchased one-half of 150 barrels of the whisky owned by appellant. The object doubtless being that the whisky might be sold at a profit, and the controlling question in the case are, first, who was to do the selling? and, second, where was the selling to be done?

There is no difficulty in the first question. Not only was the selling of such merchandise strictly within the line of the regular business of appellees; but there was an express stipulation in the written contract that they were to charge nothing for accepting or selling, showing beyond dispute that the duty and responsibility of selling was expressly devolved on appellees—this their counsel concede.

Second. It would seem naturally to follow, that as appellees expressly stipulated that they would sell the whisky, the selling was to be done by them, or under their immediate supervision and at their place of business in Paducah. For it can be scarcely doubted that their experience, capacity and skill as merchants entered largely into the inducements with appellant to make the contract. He then had five hundred barrels in the hands of merchants in Cincinnati, and he could have put the whole or any part of it on the market there at any time. He, therefore, could have had no conceivable motive to let the appellees take the one-half interest in the 150 barrels, if it insisted, they were to have the privilege of authorizing a sale whenever they chose, and at the place where the article then was, and had been for some time stored, and where Williams could have as easily authorized the sale without the arrangement with appellees, and without their agency, as with it. We do not believe the parties contemplated such a disposition of the whisky. Appellant certainly did not.

There is enough in the record to show that at the date of the agreement, whisky was dull in the Cincinnati market.

The contract was made in Paducah; the bills for the price of it were made payable in Paducah. Appellees were to sell the whisky without charge therefor, their place of business and their only

place of business so far as the record shows was at Paducah. And it seems to us that Paducah was the market contemplated by the parties that the whisky was to be brought to that point and there sold by appellees, or under their personal direction. This, we think, was clearly the intent of the parties, and the only rational interpretation of their written contract.

The sale as made by appellees, although in good faith, was not in conformity with the contract, and they have no right to hold appellant responsible for any part of the loss resulting from the sale. Wherefore, the judgment is *reversed* and the cause remanded with directions to dismiss appellees' complaint.

*J. B. Husbands, Williams, for appellant.*
*L. D. Husbands, for appellee.*